**REDACTED VERSION**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Barnes & Noble, Inc. and
barnesandnoble.com llc,

                             Plaintiffs,

v.

Alcatel-Lucent USA, Inc.,

                             Defendant.

---

Civil Action No.: 1:10-cv-05759-GBD
            ECF Case


Barnes & Noble's Memorandum In
Support Of Motion For Partial Summary
Judgment

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  THE APPLICABLE LEGAL STANDARD....................................................................1

III.  COLLATERAL ESTOPPEL APPLIES MUST ISSUE DUE TO PRIOR LITIGATION
IN THE EASTERN DISTRICT OF TEXAS................................................................3

    A.  Eastern District Of Texas Prior Litigation ................................................3

    B.  Alcatel-Lucent Accused Barnes & Noble Of Patent Infringement........................4

IV.  THE PRIOR TEXAS LITIGATION COLLATERALLY ESTOPS ALCATEL-LUCENT
FROM ASSERTING VALIDITY OF THE `131 ASSERTED PATENT CLAIMS AND
INFRINGEMENT OF THE `131, `656 AND `507 ASSERTED PATENT CLAIMS .......5

    A.  CLAIMS 1-6 OF THE `131 PATENT ARE INVALID.........................................6

        1.  Collateral Estoppel Applies To Claims 1 And 5 Of The `131 Patent
Because They Were Adjudicated To Be Invalid In The Texas Case...........7

        2.  Collateral Estoppel Also Applies To Claims 2, 3, 4 And 6 Of The
`131 Patent Because They Are Not Patentably Distinct From Invalid
Claims 1 And 5 ....................................................................................7

    B.  CLAIMS 1-6 OF THE `131 PATENT, CLAIM 10 OF THE `507 PATENT
AND CLAIMS 1-3 AND 6-9 OF THE `656 PATENT ARE NOT
INFRINGED .....................................................................................11

        1.  Collateral Estoppel Applies To Claims 1, 5 And 6 Of The `131 Patent
Because They Were Adjudicated To Be Not Infringed.............................12

        2.  Collateral Estoppel Also Applies To Claims 2, 3 And 4 Of The `131
Patent Because They Are Only Narrower Versions Of Noninfringed
Claims 1, 5 And 6 ...............................................................................15

        3.  Collateral Estoppel Applies To Claim 10 Of The `507 Patent Because
It Was Adjudicated To Be Noninfringed ...............................................16

        4.  Collateral Estoppel Applies To Claims 1 And 2 Of The `656 Patent
Because They Were Adjudicated To Be Noninfringed .............................20

        5.  Collateral Estoppel Also Applies To Claims 3, 6, 7, 8, And 9 Of The
`656 Patent Because They Are Only Narrower Versions Of
Noninfringed Claims 1 And 2 ...............................................................22

V.  BARNES & NOBLE IS LICENSED UNDER THE `131 PATENT ...............................23

VI.  CONCLUSION....................................................................................................25

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Page</u>

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
    607 F.3d 817 (Fed. Cir. 2010)................................................................................5

*Ball v. A. O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006) ...............................................2

*Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905 (2d Cir. 2010) .........................2, 5

*Blonder-Tongue Labs., Inc. v. Univ. of Illinois Foundation*, 402 U.S. 313 (1971)....................2, 6

*Bloomer v. Millinger*, 68 U.S. 340 (1863) .................................................................25

*BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) ...................16, 22

*Bourns, Inc. v. United States*, 537 F.2d 486 (Ct. Cl. 1976) ......................................7, 8

*Cygnus Telecomms. Tech., LLC v. Telesys Communs., LLC*,
    536 F.3d 1343 (Fed. Cir. 2008).......................................................................6, 7, 12

*Desper Prods., Inc. v. QSound Labs., Inc.*, 157 F.3d 1325 (Fed. Cir. 1998)..................1

*Furnace Brook LLC v. Aeropostale, Inc.*, 2011 U.S. App. LEXIS 15220 (Fed. Cir. 2011)..........11

*Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219 (2d Cir. 1994)....................1

*Hickerson v. City of New York*, 146 F.3d 99 (2d Cir. 1998).........................................6

*Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388 (Fed. Cir. 1984)..............7

*Johnson v. Watkins*, 101 F.3d 792 (2d Cir. 1996)......................................................2

*McCoy v. Mitsuboshi Cutlery*, 67 F.3d 917 (Fed. Cir. 1995) ..................................24, 25

*McNeil-PPC, Inc. v. L. Perrigo Co.,* 337 F.3d 1362 (Fed. Cir. 2003)............................5

*Medinol Ltd. v. Guidant Corp.*, 341 F. Supp. 2d 301 (S.D.N.Y. 2004)..................2, 7, 10

*Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352 (Fed. Cir. 2007) ................15, 21

*Montana v. U.S.*, 440 U.S. 147 (1979).....................................................................2

*Pharmacia & Upjohn v. Mylan Pharms., Inc.*, 170 F.3d 1373 (Fed. Cir. 1999) .........2, 6

*Purdue Pharma, L.P. v. Teva Pharms. USA, Inc.*,
    2004 U.S. Dist. LEXIS 11873 (S.D.N.Y. 2004).....................................................2

DOCSNY-514864v1

*Quanta Computer, Inc. v. LG Elects., Inc.*, 553 U.S. 617 (2008) ............................................24, 25

*Tandon Corp. v. U.S. Int'l Trade Com.*, 831 F.2d 1017 (Fed. Cir. 1987) ......................................8

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*,
    617 F.3d 1296 (Fed. Cir. 2010) ................................................................................................11

*Tripati v. Henman*, 857 F.2d 1366 (9th Cir. 1988) ........................................................................3

*Truong v. Hung Thi Nguyen*, 2011 U.S. Dist. LEXIS 37335 (S.D.N.Y. 2011) ...............................2

Statutes

28 U.S.C. § 1927 ..............................................................................................................................5

35 U.S.C. § 285 ................................................................................................................................5

Rules

Fed. R. Civ. P. 56(c) .......................................................................................................................1

DOCSNY-514864v1

I.   <u>INTRODUCTION</u>

In 2009, Alcatel-Lucent sued numerous online retailers in the Eastern District of Texas alleging infringement of three patents now at issue.  In that earlier case Alcatel-Lucent broadly asserted — as it asserts here — that these patents cover fundamental features of online retailer websites, namely (1) the use of HTML, the basic language of the World Wide Web, to transmit and receive information to and from users (U.S. Patent Nos. 5,623,656 and 5,649,131), and (2) the use of a web-based search engine to capture a string of words from a user and automatically return results other than an exact match (U.S. Patent No. 5,404,507).

The Texas jury found claims 1 and 5 of the `131 patent invalid.  It further found that the accused online retailer websites did not infringe any asserted claim, and returned a verdict that claims 1 and 5 of the `131 patent, claims 1 and 2 of the `656 patent, and claim 10 of the `507 patent were not infringed.  The Texas Court twice denied Alcatel-Lucent's motions for judgment as a matter of law.

Alcatel-Lucent had a full and fair opportunity to litigate.  It lost.  The judgment entered by the Eastern District of Texas is final.  Alcatel-Lucent should not be permitted to side-step that final judgment by continuing to assert against Barnes & Noble infringement of those same claims, as well as additional claims that are not patentably distinct, on the same infringement theories the Texas jury rejected.  It should be collaterally estopped from taking a second bite of the apple.

Barnes & Noble also respectfully seeks summary judgment of noninfringement of the `131 patent on the ground that the alleged acts of infringement are licensed.

II.   <u>THE APPLICABLE LEGAL STANDARD</u>

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  It is as appropriate in a patent case as in any other where it is clear that no rational fact-finder could find in the nonmoving party's favor.  *See Desper Prods., Inc. v. QSound Labs., Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998); *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir.

1994).

Collateral estoppel exists to prevent a party "from contesting matters that they have had a full and fair opportunity to litigate." *Montana v. U.S.*, 440 U.S. 147, 153 (1979).  In addition, collateral estoppel "conserv[es] the time and resources of the parties and the court" and "promote[s] the finality of judgments." *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996). Regional circuit law governs general collateral estoppel principles such as finality of judgment. *Medinol Ltd. v. Guidant Corp.*, 341 F. Supp. 2d 301, 313 (S.D.N.Y. 2004).

The Second Circuit applies collateral estoppel when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010) (quoting *Ball v. A. O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006)).

Under *Blonder-Tongue*, a court considers the following factors to determine whether the patentee had a full and fair opportunity to litigate the issue "(1) whether the patentee was the plaintiff in the prior suit and chose to litigate at that time and place; (2) whether the patentee was prepared to litigate and litigate to the finish against the defendant there involved . . . [(3)] whether the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and the issues in suit; and [4] whether without fault of his own the patentee was deprived of crucial evidence or witnesses in the first litigation." *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Foundation*, 402 U.S. 313, 332-34 (1971).

Collateral estoppel applies as soon as judgment is entered by the district court.  Neither the pendency of an appeal nor post trial motions prevent its application.  *Purdue Pharma, L.P. v. Teva Pharms. USA, Inc.*, 2004 U.S. Dist. LEXIS 11873 at *8 (S.D.N.Y. 2004); *Truong v. Hung Thi Nguyen*, 2011 U.S. Dist. LEXIS 37335 at *11 (S.D.N.Y. 2011) ("Pending appeals also do not affect the finality of a prior judgment for the purpose of collateral estoppel."); *Pharmacia & Upjohn v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1381 (Fed. Cir. 1999) ("[T]he fact that post-trial

2

motions are pending does not affect the finality of a judgment and thus does not prevent its

preclusive effect.").  The Ninth Circuit has explained the rationale for this principle: "[i]n the

case of preclusion, the finality requirement ensures that parties have a full opportunity to litigate

a claim before they are barred from asserting it again.  The claim has already been fully litigated

by the time a [post trial] motion is pending; the considerations of economy underlying preclusion

militate in favor of setting the point of 'finality' sooner rather than later."  *Tripati v. Henman*,

857 F.2d 1366, 1367 (9th Cir. 1988).

III.    COLLATERAL ESTOPPEL APPLIES MUST ISSUE DUE TO PRIOR LITIGATION
        IN THE EASTERN DISTRICT OF TEXAS

        A.      Eastern District Of Texas Prior Litigation

        In September 2009, Alcatel-Lucent brought a patent infringement suit in the U.S. District

Court for the Eastern District of Texas against a number of online retailers, *Alcatel-Lucent USA,*

*Inc. v. Overstock.com, Inc. et al.*, Civil Case No. 6:09-CV-422-LED (E.D. Tex. 2009) (the

"Texas case").  (Jaffe Decl. Exh. 4).  Overstock and Newegg elected not to settle the case and

proceeded to trial.

        In the Texas case, Alcatel-Lucent asserted infringement of claims 1 and 5 of the `131

patent, claims 1 and 2 of the `656 patent, and claim 10 of the `507 patent.  (*Id.*)  At trial, Alcatel-

Lucent presented the ***same infringement theories*** against the online retail websites of

Newegg.com and Overstock.com that it now asserts against Barnes & Noble.  Specifically, it

contended that (1) their web checkout processes infringed the asserted claims of the '131 and

'656 patents because they allowed users to enter information through an HTML page and receive

some type of response; and (2) their websites allegedly infringed the `507 patent because their

product search engines allowed a user to enter a string of words and receive product matches that

were not exact matches.  (Jaffe Decl. Exh. 5 at ALU-BN00013522-525).

        On October 14, 2011, the Texas jury rejected Alcatel-Lucent's infringement allegations as

to all asserted claims of all three patents.  (Jaffe Decl. Exh. 6).  The jury also found the asserted

claims of the `131 patent invalid.  (*Id.*).

3

Alcatel-Lucent filed post-trial motions on October 14, 2011.  Texas Case, 6:09-CV-422-LED, Dkt. No. 478.  On November 2, 2011, the Texas Court entered a Final Judgment consistent with the jury verdict, that is, holding claims 1 and 5 of the `131 patent invalid and not infringed, and claims 1 and 2 of the `656 patent and claim 10 of the `507 patent not infringed.  (Jaffe Decl. Exh. 7).  The Texas Court also awarded costs to defendants and denied all pending motions. (*Id.*).  Alcatel-Lucent filed renewed motions for judgment as a matter of law on November 30, 2011 on the issues of validity of the `131 patent and infringement of the `131, `507 and `656 patents.  Texas Case, 6:09-CV-422-LED, Dkt. Nos. 509, 510.  The Texas Court again denied Alcatel-Lucent's motions for judgment as a matter of law on July 30, 2012, this time finding, as to both invalidity and non-infringement, that the jury had weighed the evidence presented by both Alcatel-Lucent and the defendants, and that there was no basis upon which to overturn the jury's decision.  Texas Case, 6:09-CV-422-LED, Dkt. No. 544 (Jaffe Decl. Exh. 30).

B.     Alcatel-Lucent Accused Barnes & Noble Of Patent Infringement

In July 2009, Alcatel-Lucent first accused Barnes & Noble of infringing the `131, `656 and `507 patents.  (Jaffe Decl. Exh. 8).  As with the other online retailers in the Eastern District of Texas matter, Alcatel-Lucent accused Barnes & Noble's online checkout process of infringing the `131 and `656 patents because the site uses HTML forms to capture order information (shipping address, credit card information, etc.) and returns a subsequent HTML page in response (e.g., an error page), and it accused Barnes & Noble's product search engine of infringing the `507 patent because a user could enter a string of words and receive results that did not exactly match the string of words entered.  (*Id.*)

After Barnes & Noble demonstrated to Alcatel-Lucent that it was not infringing the asserted patents, and Alcatel-Lucent declined to withdraw its claims but instead made threats that Alcatel-Lucent had sued similarly-situated e-commerce retailers in the Eastern District of Texas, Barnes & Noble initiated this declaratory judgment action in July 2010.  Dkt. No. 1.  Despite the intervening final judgment in the Texas case, Alcatel-Lucent has declined Barnes & Noble's request that it dismiss its claims as to the `131, `656 and `507 patents.  (Jaffe Decl. Exh. 9).

DOCSNY-514864v1

Alcatel-Lucent proposed only to stay the remainder of fact discovery.  (*Id.*).  But dismissal based on collateral estoppel, not a stay, is the appropriate consequence of the Texas judgment.[1]

IV.    THE PRIOR TEXAS LITIGATION COLLATERALLY ESTOPS ALCATEL-LUCENT FROM ASSERTING VALIDITY OF THE `131 ASSERTED PATENT CLAIMS AND INFRINGEMENT OF THE `131, `656 AND `507 ASSERTED PATENT CLAIMS

With regard to the patent claims it asserted against Overstock and Newegg in the Texas case, Alcatel-Lucent cannot reasonably dispute that (1) the issues of invalidity and infringement were actually litigated and decided; (2) Alcatel-Lucent had a full and fair opportunity to litigate the validity and infringement of those claims in the Texas case; and (3) resolution of the validity and infringement of those claims was necessary to support the final judgment on the merits entered by the Eastern District of Texas.  *Bank of N.Y.*, 607 F.3d at 918.

Alcatel-Lucent was the plaintiff in that case and chose to litigate at that time and place. (Jaffe Decl. Exh. 4).  It conducted two years of discovery, fully litigated claim construction and pre-trial dispositive motions, and conducted a five-day trial involving numerous fact and expert witnesses.  (Jaffe Decl. Exhs. 10, 30).  The jury deliberated and found the asserted `131 patent claims invalid as anticipated and obvious and the `131, `507 and `656 asserted patent claims not infringed.  (Jaffe Decl. Exh. 6).  Nor is there any plausible basis to suggest that the jury wholly failed to grasp the technical subject matter and the issues in suit, particularly considering the Texas Court's careful analysis and rejection of Alcatel-Lucent's post trial motions and entry of final judgment mirroring the verdict.  Texas Case, 6:09-CV-422-LED, Dkt. No. 544 (Jaffe Decl.

---

[1] Barnes & Noble respectfully submits, and will separately brief at the appropriate juncture, that Alcatel-Lucent's continued assertion of patent claims known to be invalid or not infringed constitutes bad faith conduct of litigation, renders this an "exceptional case" under 35 U.S.C. § 285, and warrants an award of reasonable costs, expenses, and attorneys' fees pursuant to 28 U.S.C. § 1927.  "[B]ad faith litigation, where a patentee initiates litigation on a patent he knows is invalid or is not infringed, is conduct offensive to public policy, and can provide a basis for granting attorney fees."  *McNeil-PPC, Inc. v. L. Perrigo Co., 337 F.3d 1362, 1372* (Fed. Cir. 2003); *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010) ("A district court can require an attorney to pay the opposing party's reasonable costs, expenses, and attorney's fees when that attorney so multiplies the proceedings in any case unreasonably and vexatiously.").

DOCSNY-514864v1

Exh. 30); *Blonder-Tongue*, 402 U.S. at 332-34; *see also Pharmacia*, 170 F.3d at 1380 ("Losing one's case is not evidence that the jury failed to understand the invention.").

The only question left is whether "the identical issue was raised in [the] previous proceeding." *Blonder-Tongue*, 402 U.S. at 332-34. It was. In this case and the Texas case, Alcatel-Lucent broadly accused standard features of websites and web search engines of infringing the `131, `656 and `507 patents. Alcatel-Lucent has not identified any relevant differences between the accused websites and search engines in the Texas case and Barnes & Noble's website and search engine. It should not be permitted to put the same question to a different jury in the context of the Barnes & Noble website. Further, the additional claims asserted here are subsumed within the claims litigated in Texas, which means that certain limitations of those unasserted claims were litigated and the Texas jury necessarily actually decided that the Overstock.com and Newegg.com websites lacked one or more of them. Finally, any new evidence that Alcatel-Lucent may wish to introduce in this case that it did not introduce in the Texas case would give Alcatel-Lucent precisely the "second bite" that the doctrine of collateral estoppel is designed to prevent. *Hickerson v. City of New York*, 146 F.3d 99, 109 n.6 (2d Cir. 1998) ("A party . . . cannot avoid issue preclusion simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first."). Accordingly, summary judgment should be granted here.

A.    CLAIMS 1-6 OF THE `131 PATENT ARE INVALID

It is a firmly established principle that a judgment of patent invalidity in one case can collaterally estop the patent owner from contesting invalidity in a subsequent case, as long as the patent owner had a full and fair opportunity to litigate the validity of the patent in the first case." *Cygnus Telecomms. Tech., LLC v. Telesys Communs., LLC*, 536 F.3d 1343, 1349 (Fed. Cir. 2008); *see also Pharmacia*, 170 F.3d at 1379 ("[O]nce the claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party who is sued for infringement of those claims may reap the benefit of the invalidity decision under the principles of collateral estoppel.").

DOCSNY-514864v1

1.      Collateral Estoppel Applies To Claims 1 And 5 Of The `131 Patent
        Because They Were Adjudicated To Be Invalid In The Texas Case

The identical issue of the validity of claims 1 and 5 was actually litigated and decided in

the Texas case.  The final judgment in the Texas case rendered invalid claims 1 and 5 of the `131

patent.  (Jaffe Decl. Exh. 7).  Thus, Alcatel-Lucent should be estopped from maintaining the

validity of these claims in this case.  *Cygnus*, 536 F.3d 1343 at 1349.

Accordingly, because Alcatel-Lucent had a full and fair opportunity to litigate the same

issue of the validity of claims 1 and 5 of the `131 patent, and those claims were actually litigated

in the Texas case and were necessary to support the final judgment of invalidity in that case,

Alcatel-Lucent should be collaterally estopped from contesting invalidity of those claims.

2.      Collateral Estoppel Also Applies To Claims 2, 3, 4 And 6 Of The `131
        Patent Because They Are Not Patentably Distinct From Invalid
        Claims 1 And 5

Collateral estoppel also applies to claims of a patent that were not previously adjudicated

where those claims differ in only minor respects from the claims that were actually litigated.

That is because the "issues litigated, not the specific claims around which the issues were

framed," are determinative.  *Bourns, Inc. v. United States*, 537 F.2d 486, 491 (Ct. Cl. 1976); *see

also Jervis B. Webb Co. v. Southern Systems, Inc.,* 742 F.2d 1388, 1399 (Fed. Cir. 1984) ("A

judgment . . . that adjudicated less than all of a patentee's claims may operate as collateral

estoppel under certain circumstances to prevent that patentee from later charging the alleged

infringer or a third party with infringement of the nonasserted claims.").  In this case, Alcatel-

Lucent asserts claims 2, 3, 4 and 6 in addition to claims 1 and 5.  To determine whether collateral

estoppel applies to claims 2, 3, 4 and 6, the appropriate inquiry is "whether [each claim] lends

patentable significance to the claimed combination, thereby altering the issues bearing on the

obviousness determination." *Medinol*, 341 F. Supp. 2d at 304.  None of the additional claims are

patentably distinct from claims 1 and 5; therefore the finding of invalidity in the Texas case

applies to estop Alcatel-Lucent from maintaining the validity of these claims as well.

The '131 patent is entitled "Communications Protocol."  (Jaffe Decl. Exh. 1).  It is

generally directed to a communications protocol that allows a host computer to send graphical

objects to a variety of user computers (that is, terminal devices) independent of their different display capabilities.  (Jaffe Decl. Exh. 1 at 2/8-27).  Claims 1 and 5 are each directed to a method of operating a host processor communicating with a terminal device.  Claim 1 has two basic steps: (1) assigning an identifier to a respective one of a plurality of input object types, and (2) transmitting the identifier and its input object type to the device, where the plurality of object types must include at least two of the following: choice, entry, text, and image.  Claim 5 substitutes different language to refer to the same thing; "predefined presentation data types" for "input object types."[2]  Claim 5 also clarifies that the host processor provides the identifier and predefined presentation data types[3], and adds the steps of transmitting a first datum to the device and providing at the device a second datum that is the function of the first.

Although claims 2, 3, and 4 of the `131 patent use slightly different language than claims 1 and 5 and incorporate two putative additional steps, as set forth below they cover the same subject matter as claims 1 and 5.  *Tandon Corp. v. U.S. Int'l Trade Com.*, 831 F.2d 1017, 1023 (Fed. Cir. 1987) ("[P]ractice has long recognized that 'claims may be multiplied . . . to define the metes and bounds of the invention in a variety of different ways.'  Thus two claims which read differently can cover the same subject matter.") (quoting *Bourns, Inc. v. United States*, 210 Ct. Cl. 642, 537 F.2d 486 (Ct. Cl. 1976)).  Alcatel-Lucent's infringement contentions underscore the similarity in scope.  As support for its infringement allegations of claims 2, 3 and 4, Alcatel-Lucent's contentions cite substantially the same evidence cited for claims 1 and 5.  (Jaffe Decl. Exh. 12).

While claims 2, 3, and 4 contain two steps that asserted claims 1 and 5 do not contain:  a

---

[2] Alcatel-Lucent's expert testified at the Texas trial that the term 'presentation data type' in Claim 5 of the `131 patent was equivalent to the term 'input object type' in claim 1:  (Jaffe Decl. Exh. 11 at ALU-BN00013075) ("The presentation data types are — are very similar.  It uses the same evidence as input object types"); (*Id.*) ("It's the same evidence, because this is basically the same thing except for using presentation data type instead of input object type.").

[3] Alcatel-Lucent's expert testified at the Texas trial that in both claims 1 and 5 of the `131 patent, the host processor was the originator of the identifier and the input object type or presentation data type.  (Jaffe Decl. Exh. 11 at ALU-BN00013075).

8

manipulation step (manipulating an object at a user's computer), and a transmission step (transmitting data representative of the manipulation back to the server), these additional steps are additional only in form.[4]  In substance, they do not actually add any distinct subject matter beyond that of claims 1 and 5.

First, the "input object type' and 'presentation data type' limitations of claims 1 and 5, respectively, necessarily entail manipulation.  In the Texas case, the Court construed "input object type," as a "kind of displayable graphical symbol that is suitable for display on a user's terminal device and that generates particular input when touched, or *manipulated*, by a user." (Jaffe Decl. Exh. 18 at 26) (emphasis added).  Alcatel-Lucent's expert described an "input object type" as an element on a website capable of user input or manipulation.  For example, he testified that an input-object type could be a drop-down menu for selecting a state or a text entry box for entering credit card information.  (Jaffe Decl. Exh. 11 at ALU-BN00013071-73).  He also testified that the same evidence that satisfied the "input object type" limitation of claim 1, including evidence of user manipulation, also satisfied the "presentation data type" element of claim 5.  (*Id.* at ALU-BN00013074-75).

Nor does the transmission limitation add any patentable distinction to claims 2-4 over claims 1 and 5.  The basic steps of claims 1 and 5 involve assigning an identifier to different input object types and transmitting them to a user's device, at which point the user can "manipulate" them by, for example, making a selection.  The additional transmission limitation of claims 2-4 requires sending an identifier and data back to the processor after the user's manipulation.  That is, of course, an obvious, necessary, and inherent next step in a method of

---

[4] In claim 2, the limitation is "responding to a manipulation of the object at said terminal by transmitting to said processor a) said identifier and b) data representative of said manipulation, wherein said manipulation includes at least selection of said object; entry of data; or retrieval of display data."  In claim 3, the limitation is "responsive to a manipulation of said respective presentation data type at said terminal device, transmitting to said processor said identifier and data representative of said manipulation, and further comprising the step of."  In claim 4, the limitation is "responsive to a manipulation of said respective presentation data type at said terminal device, transmitting to said processor said identifier and data representative of said manipulation."

DOCSNY-514864v1

communication between a web server and a browser.  In fact, the trial transcript of the Texas case is replete with descriptions of the interactions between a user and a website.  (Jaffe Decl. Exh. 11 at pp. ALU-BN00013042, 13052, 13064-13072).

The "manipulation" and "transmission" limitations also cannot add any patentable significance to the claimed combination because they are contained in the prior art litigated in the Texas case.  *Medinol*, 341 F. Supp. 2d at 322-323 (holding that a claim limitation does not add any patentable significance to a claimed combination when it is contained in the prior art).  Alcatel-Lucent's expert, Dr. Michael Donahoo, testified on direct examination that prior art called X Windows responded to manipulation of an object at the terminal and sent data regarding the manipulation back to the host.  (Jaffe Decl. Exh. 14 at ALU-BN00013421) ("And what's highlighted is if the user moves the screen cursor — that's the mouse — in a particular direction, up, down, left, or right, then the associated computer terminal, in this case that's the X server that's running here, sends a message indicative of that fact to the host computer.").  Similarly, defendants' expert testified that X Windows anticipated claims 1 and 5 of the `131 patent because a server could send or get data from a user using an object identifier (*Id.* at ALU-BN00013414) ("So the identifier is the name . . . for an object, all right?  So a thing is going to be sitting over on the terminal display.  Now the application program can refer to that thing.  If it wants to send data to it or get data from it, it can do that using this identifier.  And so it has that.").  Thus, in Texas, both Alcatel-Lucent and the defendants addressed the issue of whether an identifier and data regarding a user manipulation, or interaction, are sent back to the processor, and this issue was necessarily considered in the adjudication of claims 1 and 5.

Claim 6 depends from claim 5 and provides only a minor difference, by specifying that the second datum is available at the device but not at the host processor.  This is not a patentable distinction.  The alleged invention allows a host processor to send data in one format independent of the display capabilities of any particular device with which it is communicating, and claim 5 makes clear that the second datum is generated *after* the first datum is sent to the device.  This is so because claim 5 requires the first datum to be sent to the device and also

10

requires that the "second datum [] is a function of said first datum."  The second datum therefore necessarily contains "data available at said device but not available at said host processor" when it is first generated (and unless and until the device subsequently sends the second datum back to the host processor).  Claim 6 does not, therefore, further limit claim 5 in any patentable way.  In fact, Alcatel-Lucent's infringement contentions in this case incorporate the same evidence cited for claim 5 in its contentions for claim 6.  (Jaffe Decl. Exh. 12 at 123).

Because the issues litigated and decided in the Texas case with respect to claims 1 and 5 of the `131 patent are not different from the issues presented by claims 2, 3, 4 and 6 here, Alcatel-Lucent is also collaterally estopped from contesting the invalidity of claims 2, 3, 4 and 6.

B.     CLAIMS 1-6 OF THE `131 PATENT, CLAIM 10 OF THE `507 PATENT AND CLAIMS 1-3 AND 6-9 OF THE `656 PATENT ARE NOT INFRINGED

Collateral estoppel may also prevent a party from asserting infringement in a second case, both where the same product is accused or where, as here, a different product is accused but given the similarity of the products at issue, the infringement issues are from a legal and practical perspective the same.  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617 F.3d 1296, 1311-1312 (Fed. Cir. 2010) (affirming judgment collaterally estopping plaintiff from arguing infringement when defendant's product conformed to a design held noninfringing in prior litigation); *see also Furnace Brook LLC v. Aeropostale, Inc.*, 2011 U.S. App. LEXIS 15220, *12 (Fed. Cir. 2011) (where Federal Circuit previously determined that "simply accessing a website on the Internet — without actually dialing a computer system directly — does not meet the 'telephone terminal' limitation" found in the asserted claims, collateral estoppel barred plaintiff from relitigating the same claims against other websites that did not directly dial a computer system).

The final judgment of noninfringement in the Texas case collaterally estops Alcatel-Lucent from contesting noninfringement in this case because it had a full and fair opportunity to litigate the issue in Texas.  *Cygnus*, 536 F.3d at 1349.  Accordingly summary judgment should be granted.

1.      Collateral Estoppel Applies To Claims 1, 5 And 6 Of The `131 Patent
        Because They Were Adjudicated To Be Not Infringed

Claims 1 and 5 of the `131 patent are method claims that describe, in general terms, the method by which hardware or software will carry out the intended process.  Claim 6 depends from claim 5.   Here, there is no question that the identical issue of infringement of claims 1 and 5 of the `131 patent was actually litigated and decided in the Texas case.

In the Texas case, Alcatel-Lucent broadly asserted that Overstock and Newegg's e-commerce websites infringe the `131 patent because they allow client computers to communicate with web servers.  (Jaffe Decl. Exh. 5 at pp. ALU-BN00013524-525).  Here, Alcatel-Lucent's infringement accusations are substantially identical.  (Jaffe Decl. Exh. 12).  Alcatel-Lucent has not identified any substantive differences between the accused features of the Barnes & Noble website and the accused features of Newegg's and Overstock's websites that relate to the limitations of the asserted `131 patent claims (*See* Apps. 1a-c).

During the Texas trial, Alcatel-Lucent's expert testified with respect to claim 1 that Overstock and Newegg's infringement occurred because their systems transmitted web pages over the Internet (Jaffe Decl. Exh. 11 at ALU-BN00013071) ("So this is just an architecture of the Newegg system. So it shows the various servers that are running at Newegg that are connected across the public internet.  If you look at the cloud that's over to the — to the left that's labeled public internet, that shows the customer up at the top left . . . . communicating over the public internet to the servers that are running inside that — that big dotted box. And inside that big dotted box are the Newegg eCommerce slots.")).  Alcatel-Lucent asserted that forms on Overstock and Newegg's websites where users enter shipping information satisfied the "input object type" limitations of claim 1 (*Id.* at ALU-BN00013072):

> "Q. And did you find that it has at least a plurality of input object types on this page?
> A. It does. You can see the two different types.  One is the text field. You can see first name over on the left. It's kind of hard to read, but it says first name, and Michael is my first name, and last name Donahoo. So I fill in my address there, and that's one — thank you.  So that's one type, the Michael Donahoo. Those text boxes where I typed in Michael or I typed in Donahoo, that's one

12

> kind of input object type. And then at the bottom, you can see the
> state. I haven't quite gotten around to picking the state yet, and
> that's Alaska. So that's a different — that's a choice of object type
> that it makes a drop-down box instead of typing stuff in."

Here, Alcatel-Lucent's allegations against Barnes & Noble rest upon the same functionality.

According to Alcatel-Lucent, the alleged infringement happens "each time a Barnes & Noble

server processes Barnes & Noble web page forms containing at least a drop-down menu and a

text entry box." (Jaffe Decl. Exh. 12 at p. 1).

 A comparison illustrating the parity between Alcatel-Lucent's infringement contentions

against Overstock, Newegg, and Barnes & Noble can be found in Appendix 1.  Alcatel-Lucent's

infringement contentions against both Overstock and Newegg contained screenshots of the

accused features in the context of the address page, which are nearly identical to those of Barnes

& Noble (Jaffe Decl. Exh. 15, p.2; Jaffe Decl. Exh. 16, p. 2).  An example is shown below:

ALCATEL-LUCENT'S `131 CONTENTIONS FOR NEWEGG



(http//:www.newegg.com).  *Accessed on 1/21/2010.*

*One example of the "choice" input object type is presented to the user as a "State" drop-down menu as
shown on the www.newegg.com web site.  The HTML (Hypertext Markup Language) source defining the
drop-down menu is provided by the* <SELECT> *form element and is assigned the identifier* <NAME>. *On
the www.newegg.com web site, the* <select> *element that defines the "State" drop-down menu is
assigned the identifier* <name="BState">.

13

ALCATEL-LUCENT'S `131 CONTENTIONS FOR BARNES & NOBLE



In fact, the type of address entry pages accused by Alcatel-Lucent are present on virtually every e-commerce website.  Alcatel-Lucent's expert admitted that, in his opinion, all such websites would infringe (Jaffe Decl. Exh. 17 at ALU-BN00013124):

> "Q. (By Mr. Baldauf) You're pointing to the HTML elements, the drop-down menus and text boxes as satisfying the input object-type limitations in the claims, correct?
> A. Yes.
> Q. And I think we talked about this in your deposition. Is it your position that any website that has a host processor or computer server that transmits a drop-down menu, text box, a radio button with an identifier infringes that claim?
> A. So it would have to have — you know, at the end, it says, the plurality of object types. So within the same page, it would have to have multiple — you would have to have a drop-down box and text box, but, yes, in that case, it would infringe."

With respect to claim 5 of the `131 patent, Alcatel-Lucent asserted that claim 5 contained two elements that claim 1 lacks, a first datum and a second datum; and it contended that the Overstock and Newegg satisfied these elements by a Set-Cookie command and a cookie. (Jaffe

14

Decl. Exh. 11 at ALU-BN00013075).  Alcatel-Lucent has accused the exact same website functions of infringing claim 5 in this case: the 'first datum' element because "[a]nother mechanism for the Barnes & Noble host processor to transmit a first datum to the terminal device is by means of a 'Set-Cookie' message header – sent by the host processor to the terminal device – which stores information on the user's terminal device in the form of a 'Cookie'"; and the "second datum" element because "Cookie information stored on a user's terminal device by the Barnes & Noble host processor is in the form of a NAME/VALUE pair that identifies the Cookie."  (Jaffe Decl. Exh. 12 at pp. 114, 120-21).  A complete comparison illustrating the parity between Alcatel-Lucent's infringement contentions against Overstock, Newegg, and Barnes & Noble can be found in Appendix 1.  Thus, the infringement issues with respect to claim 5 are the same in both the Texas case and this case.

Claim 6 was not asserted in the Texas case.  But because it depends from claim 5, Barnes & Noble cannot infringe claim 6 for the same reasons it does not infringe claim 5.  "One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."  *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (quotations omitted).

> 2.    Collateral Estoppel Also Applies To Claims 2, 3 And 4 Of The `131 Patent Because They Are Only Narrower Versions Of Noninfringed Claims 1, 5 And 6

Claims 2, 3 and 4 were also not asserted in the Texas case, but collateral estoppel applies to these claims as well because they are only narrower versions of claims 1, 5 and 6.  A chart comparing these claims and their respective elements A, B, C, D, E, F and G, is contained in Appendix 4A.  As discussed above at pp. 7-11, and as seen in Appendix 4A, claims 2, 3 and 4 of the `131 patent differ from Claims 1, 5 and 6 only in certain minor details.  The first three elements of each of claims 2, 3 and 4 do not differ at all; they are entirely contained in either claim 1 or claim 5.  Claims 2, 3 and 4 also contain additional steps, but to the extent they result in any difference in claim scope, these steps merely narrow the scope of claims 1 and 5 further, and their addition cannot result in a finding of infringement.

15

That is because to infringe a claim, the accused product must contain or perform each and every limitation.  *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007) ("Direct infringement requires a party to perform or use each and every step or element of a claimed method or product.").  That is, if a claim requires steps a, b and c but the accused product performs a and b but not step c, then the accused product does not infringe the claim. Claim 1 of the `131 patent requires steps A, B and C.  The Texas jury necessarily decided that the Overstock and Newegg websites did not perform at least one of these steps.  Claim 2 of the `131 patent repeats steps A, B and C of claim 1 and adds an additional step D.  Because the Barnes & Noble website allegedly infringes because it supports the same functionality as the Overstock and Newegg websites, and because the Texas court entered a final judgment in which it was necessarily determined that the Overstock and Newegg websites fail to perform at least one required step of claims 1 and 2 — step A, B, or C — Alcatel-Lucent should be estopped from contending that Barnes & Noble infringes '131 patent claim 1 or 2.

Similarly, claim 5 of the `131 patent contains steps A, B, C and E.  Claim 3 of the `131 patent repeats steps A, B, C and E of claim 5 and adds steps D and F.  Claim 4 of the `131 patent repeats steps A, B, C and E of Claim 5 and adds steps D, F and G.  By the same logic — because it was already determined that one of steps A, B, C or E is not present in the Overstock and Newegg websites (and therefore the Barnes & Noble website), Alcatel-Lucent should be estopped from asserting infringement of '131 patent claims 3 and 4 as well.

### 3.     Collateral Estoppel Applies To Claim 10 Of The `507 Patent Because It Was Adjudicated To Be Noninfringed

U.S. Patent No. 5,404,507 ("the `507 patent") to Bohm et al. (Jaffe Decl. Exh. 2) is entitled "Apparatus And Method For Finding Records In A Database By Formulating A Query Using Equivalent Terms Which Correspond To Terms In The Input Query."  It is generally directed to "an apparatus and method for retrieving a data record of an item or object in a database with limited or incomplete input data. (Jaffe Decl. Exh. 2 at 1/11-13).  Alcatel-Lucent asserts against Barnes & Noble a single method claim that it also asserted against Overstock and

DOCSNY-514864v1

Newegg, claim 10.

The identical infringement issues concerning claim 10 were actually litigated in the Texas case.  At trial in Texas, Alcatel-Lucent's infringement theory was that Newegg's and Overstock's website product search engines infringed the `507 patent because they allowed a user to enter product search terms and would return results that were not exact product matches, one of which was ranked highest.  (Jaffe Decl. Exh. 5 at pp. ALU-BN00013522-23).

One of the issues litigated in Texas was the phrase in the claim preamble, "retrieving a record. . . in response to an input string of target words".  The Texas Court held that "retrieving a record…" meant "retrieving only a single record."  (Jaffe Decl. Exh. 18 at p. 15).  At trial in Texas, Alcatel-Lucent's expert testified that with respect to the "selecting" step, the Newegg system selected a single best record by retrieving many records and using a relevance rank to select the best one (Jaffe Decl. Exh. 11 at ALU-BN00013052) ("So after I generate all of these records that — or retrieve all of these records in 10(d), then I can just select the best one. And this relevance ranking is a way to select the best one by ranking them from best match to worst match, and then I can obviously select the best match one by picking the one with the highest rank.").

On cross-examination, Overstock and Newegg sought to establish that no single best match was selected, because multiple search results were displayed (*Id.* at ALU-BN00013059):

> "Q. Did you perform searches on the Overstock search during your analysis?
> A. Yes, I did.
> Q. And every time you did a word search, did you receive multiple results in return?
> A. Every time I can recall — every search that I can recall returned more than one result, yes.
> Q. With respect to the Newegg site, did you also go to the Newegg site and perform searches during your analysis?
> A. Yes, I did.
> Q. When you performed searches on the Newegg site and keyed in search terms, did you also always receive multiple results as opposed to a single result?
> A. What was displayed and all that I can remember were multiple results, yes."

17

Alcatel-Lucent argued that the "selecting" step was met anyway because the additional results were presented to the user only for business reasons (*Id.* at ALU-BN00013064) ("I think that if you give — I think what I really said was, if you give something that doesn't best match, if that's what you present, that doesn't necessarily mean that you're not infringing.  If you selected the best match and then you decided through some business rule to present something completely different, then you still did all of the steps of claim 10 of the `507 patent, and you chose to override the customer's desires and present something based on a business rule.").  Alcatel-Lucent presented no other evidence or theory that the Overstock and Newegg search engines "select[] in accordance with a predetermined parameter a retrieved one of the records that best matches the input string of target words".  The jury found that neither the Overstock nor the Newegg search engines infringed claim 10, even though each used different search engines.[5]  The identical infringement issues in the Texas case were therefore litigated and actually decided, and necessary to the final judgment of noninfringement of claim 10 of the `507 patent.

Here, Alcatel-Lucent's infringement accusations are substantially identical.  Alcatel-Lucent has accused the Barnes & Noble website of infringing the "selecting" step by displaying multiple matches that can be sorted by a "Top Matches" button.  (Jaffe Decl. Exh. 19 at 70)**.**

ALCATEL-LUCENT'S `507 CONTENTIONS FOR NEWEGG

| Infringement support |
| --- |
| Newegg.com's search engine selects in accordance with a predetermined parameter a retrieved one of the records that best matches the input string of target words. |
| Newegg.com's search engine allows for a number of predetermined ways of retrieving records including the "Best Match" or most relevant hit for a given search string. |

---

[5] Testimony from the Texas case showed that the Newegg search engine was a third party search system supplied by Endeca, and the Overstock search engine was a different third party search system supplied by Mercado.  (Jaffe Decl. Exh. 22 at ALU-BN00013287, 13296).

DOCSNY-514864v1



ALCATEL-LUCENT'S `507 CONTENTIONS FOR BARNES & NOBLE



Alcatel-Lucent has not identified any substantive differences between the accused features of the Barnes & Noble search engine and the accused features of Newegg's and Overstock's search engines that relate to the limitations of claim 10.  A complete comparison illustrating the parity between Alcatel-Lucent's infringement contentions against Overstock, Newegg, and Barnes & Noble can be found in Appendix 2.

Accordingly, because the identical issue of infringement of claim 10 of the `507 patent was raised, actually litigated and decided in the Texas case, Alcatel-Lucent should be estopped from asserting infringement of claim 10 of the `507 patent against the Barnes & Noble website.

19

4.    Collateral Estoppel Applies To Claims 1 And 2 Of The `656 Patent
Because They Were Adjudicated To Be Noninfringed

U.S. Patent No. 5,623,656 to Lyons (Jaffe Decl. Exh. 3) is entitled "Script-Based Data

Communication System And Method Utilizing State Memory."  It is generally directed to a

program on a web server that uses HTML Fill-In-Forms (FIF) to retrieve and modify a web page

and transmit it to a user, based on information that the user entered into a form on a previous web

page.  (Jaffe Decl. Exh. 3 at 1/65-2/60, 3/14-49).  Alcatel-Lucent has asserted claims 1, 2, 3, 6, 7,

8 and 9 against Barnes & Noble.

At the Texas trial, Alcatel-Lucent asserted that Overstock and Newegg infringed claim 1

of the `656 patent by pointing to screenshots of the websites during the checkout process (Jaffe

Decl. Exh. 17 at ALU-BN00013133-134):

> "Q. Okay. How does this relate to your analysis regarding
> receiving script-based information containing embedded variables
> from a client node?
> A. So one thing to remember is — is this patent is really talking
> about what's happening on the web server. So I'm showing what's
> happening on the browser, but this is really the set-up for this
> script-based information that's going to be received. So I get this
> HTML down, and it's — HTML is the script as described in the
> specification of the patent. I fill in my information. It's going to
> have some embedded variables associated with first name. And
> then the server is going to receive script-based information. That's
> the HTML that generated this is going to say, you know, billing
> first name equals Michael, billing last name equals Donahoo, or
> something like that.
>                          *    *    *
> Q. (By Ms. Conlin) How does this relate to your analysis with
> respect to the receiving step of Claim 1?
> A. So this is just showing that the website actually did receive my
> information, and I know it received my information because I
> forgot to put a phone in there, and the day phone is required so you
> can see that I haven't — the day phone is — is — has a red box
> around it, so that's — that's reflective of previous state, the fact that
> I didn't enter a phone. It didn't like my credit card number. You can
> see at top, it says, please re-enter the credit cart [sic] number at the
> very top where it says error in red. Perfect. You can see I made two
> mistakes. I didn't enter this day phone, and that's what it's showing
> me here, and — and I also didn't enter a credit card number that it
> was happy with."

Alcatel-Lucent's expert based his infringement analysis on these same features when discussing

infringement of the other elements of claim 1 (Jaffe Decl. Exh. 17 at ALU-BN00013134-135).

20

The Texas Court entered final judgment that claims 1 and 2 of the `656 patent were not infringed.  (Jaffe Decl. Exh. 7).  Claim 2 is a dependent claim that cannot be infringed where the claim from which it depends is not infringed.  *Monsanto,* 503 F.3d at 1359.

Here again, Alcatel-Lucent's infringement contentions against Barnes & Noble are nearly identical to its infringement contentions against Overstock and Newegg (shown below):

ALCATEL-LUCENT'S `656 CONTENTIONS FOR NEWEGG



ALCATEL-LUCENT'S `656 CONTENTIONS FOR BARNES & NOBLE



21

Alcatel-Lucent's contentions do not identify any substantive differences that relate to the limitations of the asserted `656 patent claims.  A complete comparison illustrating the parity between Alcatel-Lucent's infringement contentions against Overstock, Newegg, and Barnes & Noble can be found in Appendix 3.

Accordingly, because the identical issues of infringement of claims 1 and 2 were raised and actually litigated and decided in the Texas case, Alcatel-Lucent should be estopped from asserting infringement of claims 1 and 2 of the `656 patent against the Barnes & Noble website.

> 5.   Collateral Estoppel Also Applies To Claims 3, 6, 7, 8, And 9 Of The `656 Patent Because They Are Only Narrower Versions Of Noninfringed Claims 1 And 2

Collateral estoppel also applies to claims 3, 6, 7, 8 and 9 of the `656 patent because they are only narrower versions of noninfringed claims 1 and 2.  A chart comparing these claims is contained in Appendix 4B, listing steps A, B, C, D, E, F and G of the asserted claims.  In finding noninfringement of claim 1 of the `656 patent, the Texas jury decided that one of steps A, B, D, E or G was not present in the Overstock and Newegg websites because the accused product must perform each step to infringe the claim.  *BMC Res.*, 498 F.3d at 1378.  Claim 3 of the `656 patent repeats steps A, B, D, E and G of Claim 1 and adds an additional element F.  This additional limitation makes claim 3 narrower than claim 1.  Because it was already determined that the Overstock and Newegg websites necessarily do not perform one of steps A, B, D, E or G, the Barnes & Noble website — as to which the infringement allegations do not differ in any meaningful respect — necessarily cannot infringe claim 3 of the `656 patent because it does not perform at least one of the steps A, B, D, E or G.

Similarly, claims 6 and 8 of the `656 patent repeat elements A, B, D, E and G of claim 1.  Claim 6 adds the additional limitation C, while claim 8 adds the additional limitations C and F.  Because it was already determined that one of elements A, B, D, E or G is not present in the Overstock and Newegg websites (and therefore the Barnes & Noble website), claims 6 and 8 of the `656 patent cannot be infringed because one of elements A, B, D, E or G is missing.  Claims 7 and 9 of the `656 patent depend from claims 6 and 8, respectively, and therefore do not infringe

for the same reasons.  Dependent claims 7 and 9 also cannot be infringed as a matter of law because the claims from which they depend are not infringed.

## V.   BARNES & NOBLE IS LICENSED UNDER THE `131 PATENT

On April 8, 2003, Microsoft brought a declaratory judgment action in the Southern District of California against Lucent Technologies, Inc. seeking a declaratory judgment that several patents asserted against its customers Dell Computer Corp. and Gateway, Inc. in other litigations were invalid and not infringed, including the Ackerman `131 patent.  *Microsoft Corp. v. Lucent Techs., Inc.*, et al., Case No. 3:03-cv-00699-B-CAB, Dkt. No. 1.  Microsoft also intervened in and moved to stay Lucent's litigations against Gateway and Dell, explaining that it "seeks to resolve all of Lucent's infringement allegations against Microsoft customers in a single proceeding," and that "[b]y filing the Declaratory Judgment Action, Microsoft is protecting its products and its customers, seeking to forestall Lucent's relentless and baseless pursuit of Microsoft's customers and to confront Lucent's charges head-on."  (Jaffe Decl. Exh. 26 at p. 2). Ultimately, on December 11, 2008, Alcatel-Lucent entered into a license agreement with Microsoft to settle the claims and counterclaims asserted in all of these litigations, including with respect to the Ackerman `131 patent.  **(**Jaffe Decl. Exh. 27).

<div align="center" style="color:red">REDACTED</div>

REDACTED

Here, Alcatel-Lucent has accused Barnes & Noble's web servers and communications with users accessing the Barnes & Noble web site of infringing the `131 patent.  (Jaffe Decl. Exh. 12 at 1).  Barnes & Noble uses Microsoft products, including Microsoft Internet Information servers and Microsoft object software code to perform the accused features of the Barnes & Noble website.  (Jaffe Decl. Exh. 28 at pp. 19, 23-24**).**  Barnes & Noble's Rule 30(b)(6) witness testified that, until 2011, Barnes & Noble used only Microsoft web servers for the Barnes & Noble website, which were used as is, out of the box (Jaffe Decl. Exh. 28 at p. 59):

> "Q. So until 2011 did Barnes & Noble use only Microsoft web servers?
> A. To the best of my knowledge and that encompasses a very large percentage of all site functionality, yes, just Microsoft.
> Q. With the Microsoft web servers, did Barnes & Noble use the functionality provided by the software just out of the box as is?
> A. Yes, we didn't have to make any modifications to it. It was simply installed and used as it was intended. We didn't have to make changes to it."

"In most instances under contract law, a patent or trademark owner intentionally creates an express license.  A licensee, of course, has an affirmative defense to a claim of patent infringement." *McCoy v. Mitsuboshi Cutlery*, 67 F.3d 917, 920 (Fed. Cir. 1995).  Private parties may contract intellectual property rights as they choose and are subject to the contractual obligations of their owner and the applicable law, just as any property right.  *McCoy*, 67 F.3d at 920.  Patent exhaustion applies where the patent-holder has authorized a party in the supply chain to practice the patent, with the result that the initial authorized sale of a patented item terminates all patent rights to that item.  *Quanta Computer, Inc. v. LG Elects., Inc.*, 553 U.S. 617, 625 (2008).

"Patentees . . . are entitled to but one royalty for the patented machine, and consequently when a patentee has himself constructed the machine and sold it, or authorized another to

24

construct and sell it, or to construct and use and operate it, and the consideration has been paid to him for the right, he has then to that extent parted with his monopoly, and ceased to have any interest whatever in the machine so sold or so authorized to be constructed and operated."
*McCoy*, 67 F.3d at 921 (*citing Bloomer v. Millinger*, 68 U.S. 340, 350 (1863)).

<div align="center" style="color:red">REDACTED</div>

Microsoft entered into the 2008 license agreement to protect customers that use its products such as Barnes & Noble from litigation.  Because Barnes & Noble is licensed to use the `131 patent, there can be no direct infringement by the Barnes & Noble website under the doctrine of patent exhaustion. *See Quanta*, 553 U.S. at 625.  Alcatel-Lucent is thus barred from enforcing the `131 patent against Barnes & Noble.

## VI.   CONCLUSION

For the foregoing reasons, Barnes & Noble respectfully requests that this Court grant summary judgment that the final judgment in Alcatel-Lucent's earlier litigation against Overstock and Newegg collaterally estops it from contesting the invalidity of claims 1, 2, 3, 4, 5 and 6 of the '131 patent and from asserting infringement of claims 1, 2, 3, 4, 5 and 6 of the `131 patent, claim 10 of the `507 patent and claims 1, 2, 3, 6, 7, 8 and 9 of the `656 patent.  Barnes & Noble further requests summary judgment that, as a Microsoft customer, it is licensed to the `131 patent as a matter of law.

<div align="center">25</div>

Respectfully submitted,


DICKSTEIN SHAPIRO LLP

Dated: August 28, 2012          /s Gerard A. Haddad
                                Christopher K. Hu
                                Gerard A. Haddad
                                Jennifer BianRosa
                                Joshua P. Jaffe
                                1633 Broadway
                                New York, NY 10019-6708
                                (212) 277-6500

                                Attorneys For Plaintiffs, Counterclaim
                                Defendants, And Counter-Counterclaim Plaintiffs
                                Barnes & Noble, Inc. and barnesandnoble.com llc.

DOCSNY-514864v1

<u>CERTIFICATE OF SERVICE</u>

  I certify that Barnes & Noble's Memorandum in Support Of Motion For Partial Summary Judgment was electronically filed on this date.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: August 28, 2012    /s_____
                Gerard A. Haddad